UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-163-MOC
1:21-cr-68-MOC-WCM-1

| | |
|---|---|
| JOSHUA ANDREW PHILLIPS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REDACTED ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1]. Also pending is the Petitioner's Motion for Status Update. [Doc. 10].

### I. BACKGROUND

Petitioner was charged with: attempt to distribute child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count One); sexual exploitation of children in violation of 18 U.S.C. § 2251(a) (Counts Two and Three); knowingly receiving and attempting to receive child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count Four); and possession with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Five). [1:21-cr-68 ("CR") Doc. 5]. Petitioner pleaded guilty to Count Two pursuant to a written Plea Agreement in exchange for the Government's dismissal of the remaining charges. [CR Doc. 20 at ¶¶ 1-2]. He admitted that he is, in fact, guilty as charged in Count Two. [Id. at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges…" and, if applicable, an Information

1

pursuant to 21 U.S.C § 851. [Id. at ¶ 4]. The Plea Agreement explains that the offense is punishable by a minimum mandatory of 15 years and not more than 30 years' imprisonment, a $250,000 fine or both and, a maximum supervised release term of life. [Id. at ¶ 5].

The United States agreed that Petitioner's plea is timely pursuant to U.S.S.G. § 3E1.1 if applicable. [Id. at ¶ 8]. The parties remained free to seek a departure or variance from the applicable guideline range at sentencing, and to argue their respective positions regarding any other specific offense characteristics, reductions, and enhancements to the offense level. [Id.].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶¶ 10-11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be

tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-18]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 23].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:



[CR Doc. 19 at 2] (paragraph numbers omitted).

On May 20, 2022, a Rule 11 hearing came before a United States Magistrate Judge. See [CR Doc. 40] (Transcript). Petitioner stated under oath that he had taken medication within the past 48 hours, but that those medications do not impair his ability to think or to understand what is happening around him. [Id . at 5]. He agreed that his mind was clear and that he understood that he was there to enter a guilty plea in his case. [Id.]. Petitioner agreed that he received a copy of the Bill of Information, discussed it with counsel, and fully understood the charge and the maximum penalty that could apply to him. [Id. at 6-9]. He admitted that he is, in fact, guilty of the charged offense. [Id. at 12]. Petitioner agreed that: he understood that pleading guilty may cause him to be

3

deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentencing guideline range until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 10-11]. Petitioner acknowledged the rights he was waiving by pleading guilty, and stated his understanding that the case would proceed directly to sentencing. [Id. at 12].

The Plea Agreement was summarized in open court. [Id. at 13-14]. Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 15]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 15-16]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id.]. Petitioner agreed had enough time to discuss any possible defenses with his lawyer, was satisfied with counsel's services. [Id. at 16-17]. Counsel agreed that she had reviewed each of the terms of the Plea Agreement with Petitioner and that she was satisfied that he understood those terms. [Id. at 17].

The Presentence Investigation Report (PSR) includes the facts set forth in the Factual Basis. [CR Doc. 31 at ¶¶ 15-17]. It also includes a Statement of Relevant Conduct that describes the evidence in greater detail, including: acts involving MMV1 and MMV2,

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████

4

███████████████████████████████████████. [Id. at ¶¶ 19-26]. The Statement of Relevant Conduct relates that, when investigators spoke to Petitioner's parents

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████ [Id. at ¶ 20]. The PSR includes Petitioner's written statement to the probation officer stating: "I accept responsibility for my offense of conviction, as described in the Factual Basis." [Id. at ¶ 36].

The PSR scored the base offense level for each victim as 32 because the offense is a violation of 18 U.S.C. § 2251. [Id. at ¶¶ 40, 49]. For victim one, the PSR added:

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████ [Id. at ¶¶ 40-44]. For victim two, the PSR added:

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

5

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. [Id. at ¶¶ 50-53]. This resulted in an adjusted offense level subtotal of 44 for each victim. [Id. at ¶¶ 48, 57]. Two levels were added for a multiple count adjustment, resulting in a combined adjusted offense level of 46. [Id. at ¶¶ 59-60]. Five levels were added because Petitioner is a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5(b)(1). [Id. at ¶ 61]. Three levels were deducted for acceptance of responsibility. [Id. at ¶¶ 62, 63]. Because the total offense level exceeded 43, the offense level was treated as 43. [Id. at ¶ 64]. Petitioner had zero criminal history points and a criminal history category of I. [Id. at ¶ 71].

The PSR's Offender Characteristics section notes that:

> ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Petitioner expressed a desire to receive mental health treatment while incarcerated; Petitioner graduated from high school and received a CNA license, although he "struggled" in school, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

[Id. at ¶¶ 88, 90, 92-93].

The resulting guideline imprisonment term was life, however, the statutorily authorized maximum sentence is 30 years and, accordingly, the applicable guideline range was 30 years pursuant to U.S.S.G. § 5G1.1(a), and a life term of supervised release. [Id. at ¶¶ 106, 109]. The PSR notes the Impact of the Plea Agreement as follows:

> Pursuant to the written Plea Agreement, Counts 1, 3, 4, and 5 of the Superseding Indictment are to be dismissed. Counts 1 and 4 carried a minimum penalty of 5 years and a maximum penalty of 20 years imprisonment per count. Count 3 carried a minimum of 15 years and a maximum of 30 years imprisonment. Count 5 carried a maximum penalty of 20 years imprisonment. **Had Phillips been found guilty or pled guilty to the remaining counts, he would have been exposed to the greater statutory penalties, resulting in a maximum statutory penalty of up to 1,440 months**; however, inasmuch as the total offense level for

Count 2 produced the highest permissible offense level, the Plea Agreement otherwise had no impact on the guideline range.

[Id. at ¶ 107] (emphasis added).

Defense counsel moved for a downward variance to 180 months' imprisonment based on factors including Plaintiff's mental and emotional condition. [CR Doc. 33]. As to Petitioner's history and characteristics, counsel notes that Dr. Samenow, a psychiatrist who interviewed Petitioner to provide Petitioner's "history and background" and to set forth "mitigating factors to consider and guide his clinical care while incarcerated and under supervised release." [CR Doc. 35 at 7 (Sealed Exhibit)]. Dr. Samenow's examination was not a full psychosexual examination and did not evaluate Petitioner's risk of recidivism. [Id.]. Dr. Samenow concluded *inter alia* that the Petitioner "needs further evaluation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Id. at 17].

A sentencing hearing came before the Court on October 4, 2022. [CR Doc. 41]. Petitioner stated that he recalled appearing before a United State magistrate judge; that he answered questions under oath; and that the questions and answers were contained on a plea transcript form. [Id. at 2]. Petitioner acknowledged that he signed the form indicating that his answers were true and accurate, and that his answers would be the same if he were asked again on the day of sentencing. [Id. at 2-3]. Counsel confirmed that she believed that Petitioner fully understood the magistrate judge's questions at the Rule 11 hearing. [Id. at 3]. Petitioner stated that he answered the questions at the Rule 11 hearing the way that he did and was going forward with his guilty plea because he is guilty of the crime to which he is pleading guilty. [Id.]. Petitioner confirmed that he went over the PSR

7

with counsel and that he understood its contents; counsel agreed that she believed that Petitioner understood the contents of the PSR. [Id. at 5].

Counsel argued for a downward variance to 180 months' imprisonment. [Id. at 6]. She argued *inter alia* that: Petitioner is ▆▆▆▆▆▆▆▆▆▆▆▆ he will have "a very hard time" in prison because of his psychological conditions and problems getting along with people; and he had already been "bullied and victimized" in jail. [Id. at 8]. Petitioner apologized for the "pain" and "hurt" that he had caused, and he assured the Court that he would not repeat his mistakes. [Id. at 11].

The Government opposed the variance, noting that: ▆▆▆▆▆▆▆▆▆▆▆▆▆…."[1] [Id. at 12-15]. The Government argued that, if a variance were granted, the sentence should not be less than 240 months' imprisonment. [Id. at 17].

The Court adopted the PSR and specifically noted various factors identified by counsel including Petitioner's IQ and ▆▆▆▆▆▆ that should be further examined, as well as his vulnerability to violence while incarcerated. [Id. at 21]. The Court considered the § 3553(a) factors, including: promoting respect for the law; providing adequate punishment;

---

[1] Petitioner's mother denied this at the sentencing hearing. [CR Doc. 41 at 28-29].

protecting the public; deterrence; unwarranted sentencing disparity; and Petitioner's individual characteristics. [Id. at 31-32]. The Court noted that, although this was a "crime of opportunity," the Court remained concerned about "whether or not the public will be protected from further crimes of this defendant who will be older but still not disabled at the age of 50." [Id. at 25]. It considered Petitioner's "psychological factors and the problems he has, his IQ and all of the other things that have been discussed at length today…," and concluded that a downward variance was appropriate in light of Petitioner's ███████████████ and his "psychological problems, … IQ and all of the other factors…." [Id. at 32-33]. The Court noted that 240 months is "the lowest that [the Court] can go" in light of the "terrible," "very, very, very bad" offense that "has to be punished in a very serious way." [Id. at 24]. It therefore sentenced Petitioner below the guidelines to 240 months' imprisonment followed by a life term of supervised release in a Judgment entered on October 12, 2022. [Id. at 33-34; CR Docs. 37, 38]. Petitioner did not appeal.

Petitioner filed the instant Motion to Vacate on June 14, 2023.[2] [Doc. 1]. He claims that counsel was ineffective for failing to: (1) object that Petitioner was incompetent to plead guilty; (2) request further psychological testing; and (3) raise 3553(a) factors that warranted a downward departure. He asks the Court to "have defendant fully mentally evaluated, remand for re-sentencing pursuant to evaluation." [Id. at 11]. The Government asks the Court to dismiss or deny the Motion because Petitioner has failed to establish deficient performance or prejudice. [Doc. 7]. Petitioner filed a Reply. [Doc. 8]. The matter is ripe for disposition.

Petitioner has also filed a Motion for Status Update in which he asks the Court for an update

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

on the status of these proceedings.[3] [Doc. 10].

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION[4]

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional

---

[3] The Clerk mailed the Petitioner a copy of the current docket sheet the day after his Motion was docketed. [See March 15, 2024 Staff Note].
[4] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

10

norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet the burden of demonstrating prejudice, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### A. Involuntary Plea

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee v. United States, 582 U.S. 357, 364-65 (2017) (the question is whether the defendant would have gone to trial, not whether the result

11

of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Here, Petitioner contends that counsel was ineffective for allowing him to plead guilty and "submit to a colloquy" because it was clear from his "deameanor, appearance and evaluation that he is intellectually disabled." [Doc. 8 at 4]. The record conclusively demonstrates that: the Petitioner entered his guilty plea knowingly and voluntarily, with a full understanding of its consequences; he pleaded guilty because he is guilty; that counsel performed to the Petitioner's satisfaction; he understood and accepted all the terms of the Plea Agreement; he admitted that the Factual Basis was true and accurate, and could have been proven by the Government beyond a reasonable doubt at a trial; and he voluntarily waived his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. [CR Doc. 40 at 6-17]. His present self-serving and unsupported contentions that counsel should have objected that Petitioner lacked the mental capacity to plead guilty, are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Moreover, Petitioner has failed to demonstrate prejudice. Petitioner does not state that he would not have pleaded guilty but for counsel's allegedly ineffective assistance and he does not seek to withdraw his guilty plea. His claim is, therefore, facially insufficient. See Hill, 474 U.S. at

12

59. Even if the Petitioner had argued prejudice, his argument would be rejected because the Petitioner failed to demonstrate that it would have been reasonable for him to reject the plea and to proceed to trial in light of the strong evidence of his guilt as set forth in the Factual Basis and PSR, and the benefits that the Petitioner received by pleading guilty including the dismissal of four serious charges that carried a maximum statutory penalty of 1,440 months' imprisonment and a three-level reduction for acceptance of responsibility. Thus, even if Petitioner had asserted that he would have proceeded to trial but for counsel's allegedly deficient performance, this claim would be rejected.

### B. Competency

"Before a court may accept a guilty plea, it must ensure that the defendant is competent to enter the plea." United States v. Moussaoui, 591 F.3d 263, 291 (4th Cir. 2010) (quoting United States v. Dannon, 191 F.3d 561, 564 (4th Cir. 1999)). The standard for competence to plead guilty is the same as the competence to stand trial: he must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and [when] he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960); Moussaoui, 591 F.3d at 291. "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000) (citation omitted). Further, "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Id.

A district court should hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of

13

the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). To prevail on such a claim, a defendant must establish that the trial court ignored facts regarding a bona fide doubt regarding his competency to stand trial. Moussaoui, 591 F.3d at 291. This inquiry requires examination of "all the record evidence pertaining to the defendant's competence, including: (1) any history of irrational behavior; (2) the defendant's demeanor at and prior to sentencing; and (3) prior medical opinions on competency." United States v. General, 278 F.3d 389, 397 (4th Cir. 2002). Whether "reasonable cause" exists is a question left to the sound discretion of the district court. United States v. Bernard, 708 F.3d 583, 592-93 (4th Cir. 2013) (reasonable cause may be established through "evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence.") (internal quotation marks omitted).

To demonstrate prejudice for counsel's failure to investigate a claim of incompetence, a petitioner must prove only that the court would have held a competency hearing had counsel raised the issue. Becton v. Barnett, 920 F.2d 1190, 1193-94 (4th Cir. 1990).

Petitioner has not identified any "red flags" that would have required the Court or counsel to inquire further into his competence. See United States v. Nicholson, 676 F.3d 376 (4th Cir. 2012) (a trial court need only inquire into a criminal defendant's competence when a response in a plea colloquy raises a red flag as to his competence to plead guilty). The record reveals that Petitioner: behaved appropriately in court; stated that he fully understood the Plea Agreement, Factual Basis, and PSR; responded appropriately to questions; appeared to understand the proceedings; and engaged in meaningful consultation with counsel. [CR Docs. 40, 41]. Counsel confirmed that she had reviewed the Plea Agreement and PSR with Petitioner and that she was satisfied that Petitioner understood them and knew what he was doing. [CR Doc. 40 at 16-17; CR Doc. 41 at 3]. Petitioner's present self-serving suggestion that he may have lacked the capacity to

14

plead guilty and that counsel should have requested further evaluation is speculative, unsupported, and controverted by the record including Petitioner's own sworn statements, including that he fully understood the proceedings, as discussed in Section A, *supra*. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Dr. Samenow's report does not alter the conclusion that Petitioner's plea was knowing and voluntary. The issues identified in Dr. Samenow's report, including ████████████████████████████████████████████████████████████████████████ ██████████████████████████, were addressed in the PSR and at the sentencing hearing. [See CR Doc. 41 at 8; CR Doc. 31 at ¶¶ 88, 92-93]. However, nothing in the report found that Petitioner was incompetent or suggested that the Petitioner lacked the capacity to plead guilty. See generally Atkins v. Virginia, 536 U.S. 304, 318 (2002) (individuals with a low IQ, even in the developmentally disabled range, frequently know the difference between right and wrong and are competent to stand trial); United States v. Robinson, 404 F.3d 850, 856–58 (4th Cir. 2005) (affirming district court's finding that defendant was competent to stand trial even though testing indicated that defendant had an IQ of 70, in the "borderline functional" range, had a "variety of mental disorders, including attention-deficit/hyperactivity disorder (ADHD), reading disorder, mathematics disorder, expressive language disorder, provisional polysubstance abuse, schizotypal personality disorder, and borderline intellectual functioning," and possibly had "some subtle

15

neurological problems"). Reasonable counsel could have decided that requesting a competency evaluation was not warranted in light of the Petitioner's education, employment history, behavior before the Court, understanding of the charges and proceedings, and ability to meaningfully consult with counsel.

Petitioner has also failed to demonstrate prejudice. He does not asset that he was incompetent at the time he pleaded guilty and he has not come forward with any evidence to support such a conclusion. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the court") (internal quotation and citations omitted). The record reveals to the contrary that he was competent, as discussed *supra*. There is no reasonable probability, under these circumstances, that the Court would have granted a competency hearing had counsel requested one. Accordingly, Petitioner's claim that counsel was ineffective in this regard is denied.

### C. Sentencing

After calculating the advisory guidelines range, a sentencing court must consider the § 3553(a) sentencing factors, "conduct an individualized assessment based on the facts before the court, and explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing." United States v. Hoover, 2024 WL 1057764, at *8 (4th Cir. Mar. 12, 2024) (quoting United States v. Fowler, 58 F.4th 142, 153 (4th Cir. 2023)). The § 3553(a) factors include the nature of the offense, the characteristics of the defendant, the Guidelines recommendation, and the need for deterrence, public safety, and rehabilitation. See 18 U.S.C. § 3553(a)(1)-(7). The court must also "consider all non-frivolous reasons" the defendant has given for "a different sentence and explain why it has rejected those arguments." Fowler, 58 F.4th at 153 (cleaned up). The court's explanation must "fully address[ ] the defendant's central

16

Case 1:23-cv-00163-MOC    Document 11    Filed 04/17/24    Page 16 of 20

thesis." Id. (cleaned up). With regards to prejudice, in the context of sentencing, any amount of actual jail time has Sixth Amendment significance. Glover v. United States, 531 U.S. 198, 203 (2001).

Petitioner conclusively contends that counsel was ineffective for failing to raise "3553(a) factors" that warranted a downward departure. [Doc. 1 at 6]. In his Reply, he argues more specifically that counsel was ineffective for failing to: request full "psycho-sexual evaluation along with a Static 99 score" to determine his likelihood of recidivism and his likelihood to commit a "touch" offense, without which he contends that a § 3553 analysis was impossible; and argue that Petitioner is particularly vulnerable in prison. [Doc. 8 at 2-3].

The record conclusively refutes Petitioner's claim that counsel did not argue that Petitioner is a vulnerable in prison; counsel presented this issue at sentencing and the Court expressly considered that factor. [CR Doc. 41 at 8, 21]. The record also conclusively establishes that counsel addressed recidivism. Counsel noted the incidental nature of the victim contact, that Petitioner's sentence would provide plenty of time for sex offender treatment, and that Petitioner will be on supervision for life. [CR Doc. 41 at 7-8]. In addition, Petitioner told the Court that he will never repeat his actions. [Id. at 11]. Nothing required Petitioner to undergo psychological testing to determine his likelihood of recidivism, and reasonable counsel could have decided that such testing would have been fruitless, in light of evidence in the PSR regarding Petitioner's extensive involvement in child pornography including some evidence that Petitioner had, indeed, recidivated. [See CR Doc. 41 at 15]. Moreover, Petitioner's claim that counsel was deficient is conclusory and speculative, in that he assumes that such testing would have been favorable to him, but he has not come forward with evidence to support that conclusion. See generally Dyess, 730 F.3d at 354; Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990) (a habeas petitioner "cannot

17

establish ineffective assistance of counsel under Strickland[ ] on the general claim that additional witnesses should have been called...."); Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (no ineffective assistance where no proffer is made of what favorable evidence or testimony would have been produced); see, e.g., Mickens v. Taylor, 240 F.3d 348 (4th Cir. 2001) (affirming denial of ineffective assistance claim on appeal where § 2254 petitioner failed to establish what new information a mental health expert would have discovered beyond what counsel already knew at the time of sentencing, had counsel ordered additional evaluation).

Nor can Petitioner demonstrate prejudice. Counsel achieved a substantial downward variance from 360 months to 240 months' imprisonment. Moreover, the Court specifically noted that it was unable to grant a sentence any lower than 240 months' imprisonment in light of factors including the horrific nature of the offense. Petitioner has failed to demonstrate a reasonable probability that the Court would have granted a sentence lower than 240 months under any circumstances whatsoever. Accordingly, this claim will be dismissed and denied.

### D. Motion for Status Update

Finally, Petitioner seeks a status update. Because the Clerk provided Petitioner a copy of the docket sheet, and because the Court has now disposed of the Motion to Vacate, his Motion for Status Update will be denied as moot.

### E. Seal

The Court finds that the portions of this Order referring to ███████████████████████████████████████████████████████████████, ████, must be permanently sealed because they refer to sealed portions of the criminal record, and may give rise to genuine security concerns. The Clerk of Court will, therefore, be instructed to permanently seal the unredacted Order ("Sealed Order"), and to separately docket a redacted

18

version of the Order ("Redacted Order") that will be made available to the public.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is dismissed and denied, and Petitioner's Motion for Status Update is denied as moot. The Redacted Order shall be docketed on the publicly available docket, and the unredacted Sealed Order will be permanently sealed.

**IT IS, THEREFORE, ORDERED** that:

1. The Petitioner's Motion to Vacate [Doc. 1] is **DISMISSED AND DENIED**.

2. The Petitioner's Motion for Status Update [Doc. 10] is **DENIED AS MOOT**.

3. The Clerk is instructed to docket the Redacted Order on the public docket, and is further directed to docket and permanently **SEAL** the unredacted Sealed Order.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

5. The Clerk is instructed to close this case.

Signed: April 16, 2024

Max O. Cogburn Jr.
United States District Judge